IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02042-WJM-MJW

JOSEPH VIGIL,

Plaintiff(s),

v.

RICK RAEMISCH (Executive Director), Colorado Dept. of Corrections, and
DARYL PROFITT (Employee of C.D.O.C.), Faith and Citizens Programs,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6) (Docket No. 17)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to the undersigned pursuant to the Order Referring Case issued by Judge William J. Martinez on October 18, 2013. (Docket No. 13).

**PLAINTIFF'S ALLEGATIONS**

The pro se incarcerated plaintiff, Joseph Vigil, alleges the following in his Second Amended Prisoner Complaint (Docket No. 10), which is brought pursuant to 42 U.S.C. § 1983. Plaintiff is of Native American bloodline (Dakota, Arapahoe). Staff of the Colorado Department of Corrections ("CDOC") have discriminated against him based on race (Claim One), have defamed him (Claim Two), have caused him mental anguish (Claim Three), and have violated his right to freedom of expression and freedom of religion (Claim Four and Nature of the Case) by not permitting him to wear a Mohawk

2

haircut "that fits into [his] cultural beliefs." (Docket No. 10 at 4).

Defendant Daryl Profitt denied plaintiff's request to have a Mohawk haircut due to CDOC policy that states that haircuts shall not be associated with any "disruptive group affiliation." Defendant Raemisch enforced the statewide policy that violates plaintiff's constitutional rights. CDOC staff does not tell "Rastafarian people" and "Jewish people" how to cut their hair. "Jewish people" wear "locks" and "Rastafarian people" have dread locks to practice their religion. Those two religious groups can freely express their culture and religion with no issues. However, racial discrimination is openly practiced in CDOC facilities. There are gang members who are known to shave their heads bald to represent gang ties, but CDOC staff never tell them anything, as far as plaintiff has seen.

On an administrative grievance plaintiff wrote that "a mohawk is a 'way of life." (Docket No. 10 at 4). Plaintiff "tried to explain that it's a [sic] everyday type of thing, not just at certain times. No other cultural groups' [sic] get this type of discrimination by CDOC staff + administration." "CDOC openly + intentionally practices very openly racial discrimination towards Native American people for no legit [sic] reason."

Plaintiff also raises a claim of defamation of character because defendant

> Profitt claims that aan A.R. 800-01J form is for "amending faith group" practices; my "way of life" to have a mohawk is a tradition of my tribal customs' [sic] since the beginning of time. Faith + citizens' programs claims that the traditional way for Native Americans to have a hair style is just "long hair" that is very wrong (Faith + citizens) programs is very ignorant of tribal ways + customs not all Native American Tribes' [sic] wear the same hair style thats' [sic], "long hair'!
>
> To say that CDOC allows, the "traditional", Native American hairstyle "long hair", thats' [sic] "stereo typing", "judging" + "bias," "categorizing" to label **all** the Native American hair styles' [sic] "long hair," traditional. There are

> tribal traditions that have different hair styles.  The statewide CDOC policy that gets enforced by Executive director, violates my U.S. constitutional rights because none of the tribal customs get recognized or acknowledged by a "policy" that puts Native American in one "category," also the policies aren't enforcing the "disruptive group affiliation" rules on other cultures.  Simply, Native Americans are treated unfair by CDOC policies, + staff that contribute to enforce the "policies".
>
> On AR form 800-01J that I filled out on 4-24-13' I requested to have a mohawk haircut the response from Daryl Profitt claims that CDOC has been charged w/maintaining all incarcerated offenders that, "allow for the safety of the general public," that is a type of "mockery" + "belittle" this is no shape or form a "general public" it is a justification or excuse to devalue (my claims) or manipulate a system to go against by "freedom of expression"

(Docket No. 10 at 6).

In his third claim, plaintiff alleges "mental anguish."  (Docket No. 10 at 6).  The statewide policy in AR 1A850-11 does not allow him to "'practice' [his] 'way of life' by [him] not having a mohawk haircut this, is a tribal custom + tradition of my people."  (Docket No. 10 at 6).  At one point, there was a correctional officer who had a Mohawk style type of haircut, which shows there are "double standards" that "acts in a way in a [sic] 'unequal' matter towards native American people 'statewide'."  "CDOC staff should be held accountable also to have proper 'dress + hygiene', + 'neat + clean." also not to be associated w/any 'disruptive group affiliation.'" (Docket No. 10 at 6).

In Claim Four, plaintiff raises a claim of "Freedom of Expression."  The Faith + Citizens Programs claim there is no compelling religious reason for Native Americans to be permitted to have a Mohawk haircut, but there was no reason or proof that Profitt has that was presented to plaintiff to disprove Native Americans do not have a Mohawk haircut.  That violates plaintiff's freedom of expression.  The response to plaintiff's grievance said "'shall be neat and clean' it doesn't specifically say what cultural or

religious group that can have a (neat and clean), haircut-[plaintiff's] reason for a mohawk haircut is to represent my bloodline, it shows my identity from my Dakota, Arapahoe tribes'." (Docket No. 10 at 7).

Plaintiff seeks injunctive and monetary relief.

**DEFENDANTS' MOTION TO DISMISS**

Now before the court for a report and recommendation is the defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(1) and (6) (Docket No. 17) and Exhibits (Docket No. 18). Plaintiff filed a response (Docket No. 20), and defendants filed a reply (Docket No. 27). The court has carefully considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and recommendation.

Defendants seek dismissal of the Second Amended Complaint on the following grounds: (1) claims for monetary damages against defendants in their official capacities are barred; (2) plaintiff fails to state a claim for the violation of his constitutional rights, and to the extent plaintiff seeks monetary damages, defendants are entitled to qualified immunity; (3) alternatively, plaintiff fails to state a viable claim for compensatory damages for mental and emotional distress or for punitive damages; (4) the court should decline to exercise supplemental jurisdiction over plaintiff's defamation claim; (5) plaintiff's defamation claim is jurisdictionally barred by the Colorado Governmental Immunity Act; and (6) alternatively, plaintiff's defamation claim fails on its merits.

Rule 12(b)(1) of the Federal Rules of Civil Procedure concerns whether the court has jurisdiction to hear the case before it. It:

5

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

<u>Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.</u>, 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Cutter v. RailAmerica, Inc.</u>, 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Official Capacity**

Defendants correctly assert that to the extent the plaintiff is suing them in their official capacity for damages, they are entitled to immunity pursuant to the Eleventh Amendment. It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police,

491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994). Therefore, to the extent that the plaintiff's claims against the defendants are against them in their official capacities for monetary damages, such relief is barred by the Eleventh Amendment, and such claims should be dismissed.

### First Amendment Claim

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). Nevertheless, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). "This approach ensures the ability of corrections officials 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,' . . . and avoid unnecessary intrusion of the judiciary into problems particularly ill suited to 'resolution by decree.'" Id. (citations omitted).

"Thus, in order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must first show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'" Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (citation omitted). "Second, prison official-defendants may 'identif[y] the legitimate penological interests that justified the impinging conduct.' . . . At that point, courts balance the factors set forth in Turner v. Safley, 482 U.S. 78-89-91 . . . to determine the reasonableness of the regulation . . . ." Id. "Although the *Turner* case specifically dealt only with prison regulations, the Tenth Circuit has applied this test to actions taken by prison officials as well." Howard v. United States, 864 F. Supp. 1019, 1025 (D. Colo. 1994) (citing Frazier v. Dubois, 922 F.2d 560, 562 (10th Cir. 1990)).

Even construing plaintiff's First Amendment claim in the most liberal fashion possible, and drawing the strongest inferences in his favor, this court finds that his First Amendment claim should be dismissed. Plaintiff has made no allegation that not being allowed to have a Mohawk haircut subjected him to a "substantial burden" on his religious practices or beliefs. "[A] 'substantial burden' is one that (1) significantly inhibits or constrains a plaintiff's religious conduct or expression; (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities." Nichols v. Federal Bureau of Prisons, 2010 WL 4932670, at *3 (D. Colo. Nov. 30, 2010). Here, plaintiff makes no allegations concerning any burden on his religious beliefs. In fact, he merely seems to claim that a Mohawk haircut is part of his tribal traditions, culture, or "way of life," not part of his religion. As defendants assert in their reply, plaintiff seems to conflate

cultural traditions with religious exercises, and though there may be overlap between the two, the two are not synonymous. (Docket No. 27 at 3).

The court notes that in his response plaintiff asserts that "[h]air similar to most customs and traditions of each tribe has meanings that are important to Native people to get rid of the hair without proper ceremony is to disobey the customs of ones tribe. Hair contains part of ones spirit and must be treated good .<u>The only times we cut our hair</u> is when the pasing [sic] of a loved one when we are in mourning not to just be cut when CDOC officials decide by a power trip or a personal vendetta created against us for no good reason but to discriminate." (Docket No. 20) (emphasis added). As noted by defendants, plaintiff makes no such assertion in his pleading and cannot remedy a defective pleading by attempting to add allegations in a response to a motion. In any event, even if plaintiff had made such an allegation in his pleading, it does not cure the deficiency in plaintiff's First Amendment claim. He once again merely mentions "customs and traditions" rather than any burden, let alone a substantial burden, on any religious beliefs or exercise. Furthermore, these allegations in his response would seem to support a claim <u>against</u> the cutting of his hair, not a need to shave off a lot of his hair into a Mohawk. In addition, as noted by defendants, the grievance response attached to plaintiff's pleading indicates that the wearing of long hair is recognized and permitted for Native Americans. (Docket No. 10 at 12). It is only the wearing of a Mohawk, which prison officials have identified as associated with certain security groups (i.e., gangs), that is not permitted.

In sum, this court finds that the plaintiff has failed to state a First Amendment claim.

### Equal Protection

Plaintiff also makes very general claims of "racial discrimination." He asserts that no other "cultural groups get this kind of discrimination," noting that other groups, such as Jewish inmates and Rastafarian inmates, are allowed to wear side locks and dread locks, respectively. As defendants assert in their motion, as best can be determined, plaintiff is asserting a claim that his equal protection rights have been violated.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. The Fourteenth Amendment's equal protection guarantee "is essentially a directive that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to assert a viable equal protection claim, plaintiff[] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998).

Plaintiff has made no such showing here. As correctly asserted by defendants, plaintiff has failed to allege specific facts showing he was treated differently than similarly-situated individuals. Conclusory allegations or legal conclusions are not sufficient to state a viable claim. See Bell Atlantic Corp., 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .") (citations omitted)); Deberry v. Davis, 460 Fed. Appx.

12

796, 801 (10th Cir. 2012) (prisoner did not carry his burden, even at the more generous motion-to-dismiss stage, of sufficiently alleging an equal protection violation); Fogle, 435 F.3d at 1261. As found above, plaintiff has failed to allege that not being allowed to have a Mohawk hair cut is a substantial burden on his religious exercise. He thus is not similarly-situated to religious groups that are permitted to wear certain hairstyles necessary to state an equal protection claim.

### Supplemental Jurisdiction

Plaintiff's remaining claim is for defamation of character. This court agrees with defendants that the court should decline to exercise jurisdiction over this supplemental state law claim. See Foster v. Mountain Coal Co., L.L.C., — F. Supp.2d —, 2014 WL 3747074, at *10 (D. Colo. July 30, 2014) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (holding that if the federal claims supporting supplemental jurisdiction are dismissed prior to trial, the state claims should be dismissed as well); 28 U.S.C. § 1367(c)).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Docket No. 17) be **granted**, that plaintiff's defamation claim be dismissed without prejudice, and that plaintiff's remaining claims be dismissed with prejudice.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District**

13

**Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: August 15, 2014  
       Denver, Colorado

s/ Michael J. Watanabe  
Michael J. Watanabe  
United States Magistrate Judge